359 So.2d 286 (1978)
Salvadore BIONDOLILLO, Sr.
v.
GEOSOURCE, INC., et al.
No. 8971.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 1978.
Rehearing Denied June 14, 1978.
*287 Laborde & Brooks, John H. Brooks, New Orleans, for plaintiff-appellee.
Drury, Lozes & Curry, Robert H. Wood, Jr., New Orleans, for defendants-appellants.
Before STOULIG, BEER, and GAUDIN, JJ.
STOULIG, Judge.
Salvadore Biondolillo, Sr., a shipfitter, sustained an injury to his left foot in an industrial accident on December 16, 1975 that is compensable under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. (LHWCA) or under the Louisiana Workmen's Compensation Act (LWCA). (R.S. 23:1021 et seq.) Defendant Commercial Union Insurance Company, insurer of Hunt Shipyards, a division of Geosource, Inc., tendered, and plaintiff accepted, weekly payments of $79.60 for 305/7 weeks after the injury, the benefit due under the LHWCA.
On July 20, 1976, Biondolillo returned to work assigned to light duties and continued in this capacity until he was fired on November 9, 1976. Shortly thereafter, plaintiff accepted and negotiated a draft tendered by the employer's insurer for $1,631.80, representing a lump sum settlement amount under LHWCA. On December 16, 1975, plaintiff filed suit seeking Louisiana lifetime workmen's compensation benefits for an alleged total and permanent disability stemming from the same incident for which he was paid federal compensation benefits.
From a judgment awarding plaintiff compensation benefits of $85 per week from December 16, 1975 through date of judgment (March 3,1977), subject to a credit for all benefits previously paid, the defendants have appealed.
*288 The issues before us are (1) whether plaintiff did elect to receive benefits under LHWCA that would preclude his also pursuing a LWCA compensation remedy in state court; and if we conclude no binding election was made, (2) whether plaintiff in fact did sustain an injury that would support an award of compensation for disability.
For plaintiff to have made an election to accept federal benefits that would exclude his later pursuing the state remedy, it is necessary that his choice be an informed decision based on weighing the alternatives available to him. An election is a choice between alternatives. If plaintiff has not been made aware of his options, in accepting benefits from one he has not by implication affirmed a decision to reject the remedy under the other.
In this case the drafts presented to Biondolillo weekly and the one tendered as a lump sum settlement did not indicate the payments were for federal benefits. The choice of payment here was made by the insurer rather than the workman. The record indicates a claims adjuster may have discussed with plaintiff that his benefits were being computed under the federal act and that plaintiff also inquired at the Department of Labor (accompanied by his attorney's law clerk) as to how to submit a claim, but no claim was ever filed.
Federal compensation, if elected, is the exclusive remedy (33 U.S.C.A. § 905); however, the courts will not permit an insurer to elect the form of benefits to be distributed and establish that a valid election has taken place by the simple act of an uninformed claimant negotiating a draft. See Peter v. Arrien, 463 F.2d 252 (3d Cir. 1972); Holland v. Harrison Bros. Dry Dock and Repair Yard, Inc., 306 F.2d 369 (5th Cir. 1962); Gulf Oil Corporation v. O'Keeffe, 242 F.Supp. 881 (E.D.S.C.1965).
In Calbeck v. Travelers Insurance Co., 370 U.S. 114, 131, 82 S.Ct. 1196, 1205, 1206, 8 L.Ed.2d 368 (1962), the Supreme Court stated:
"We turn finally to a question raised only in Donovan v. Avondale Shipyards. The employer contends that the employee accepted benefits under the Louisiana State Compensation Act and that this constitutes an election of remedies which bars prosecution of his claim under the Longshoremen's Act. Compensation payments may be made under the Louisiana Compensation Act without a prior administrative proceeding. Before the federal claim was filed Avondale made payments to the employee for some two years and three months at the maximum rate provided by the Louisiana statute. The employee accepted the checks which bore a notation on their face that they were payments of compensation under the state act. In addition Avondale advanced a substantial sum to the employee to be credited against future compensation payments. Avondale also paid medical expenses for the employee's account in excess of the maximum liability imposed by the Louisiana statute. In the compensation order entered by Deputy Commissioner Donovan under the Longshoremen's Act the full amount of all payments made by the employer was credited against the award, and no impermissible double recovery is possible. We hold that the acceptance of the payments does not constitute an election of the remedy under state law precluding recovery under the Longshoremen's Act. Nothing in the statute requires a contrary result. And we agree that the circumstances do not support a finding of a binding election to look solely to the state law for recovery. * * *"
Here, the initial choice of remedies was made by the insurer. Plaintiff's actions subsequent to this choice do not, in our view, indicate a binding election because there is nothing before us to indicate that Biondolillo was aware of the alternatives at any time prior to his seeking that counsel which resulted in the filing of the state workmen's compensation suit.
It is stipulated that plaintiff sustained a compensable injury while working with a *289 bilge pump on a barge. Only the duration of disability is at issue.
Dr. Earl J. Rozas, his treating orthopedist, saw plaintiff the day of the accident at West Jefferson Hospital and diagnosed "* * * a comminuted fracture of the shaft of the first metatarsal heads, and there was also a fracture of the shaft of the fifth metatarsal." Plaintiff was hospitalized and before his discharge when the swelling in his foot had subsided a short leg cast was applied, which he wore until January 12, 1976, and then a surgical boot (this is a high topped shoe used specifically for swelling) was substituted. During the following months plaintiff's treatment continued (he broke several appointments) and by April 30, Dr. Rozas found he was walking well and there was no swelling of the foot. On May 3, 1976 he suggested plaintiff return to the job for light duty. Dr. Rozas at that time ordered "space shoes" to conform to the plaintiff's feet, and on July 19, 1976 the shoes were fitted and Rozas discharged him to return to his regular duties. Dr. Rozas concluded plaintiff reached "maximum cure" with a 10% impairment and the shoes would enable him to resume full duties; however, he admitted he did not know the job duties. The orthopedist predicted that in the future plaintiff would have a problem climbing, jumping or running because the injured foot could not take the extra stress.
Dr. Kenneth Adatto, an expert orthopedist, examined plaintiff in January 1977, found objective evidence of injury to the foot and stated he had a 25% disability which at that time prevented him from assuming his former duties as a shipfitter. Among the duties of a shipfitter that plaintiff could no longer perform were walking on pipes, climbing metal ladders and climbing scaffolding, which Dr. Rozas also opined plaintiff could not perform.
Plaintiff was discharged from his job on November 9, 1976. Defendants suggest, without proving by competent evidence, that plaintiff was fired for goldbricking and/or drinking, while plaintiff contends the reason was he could not keep up with the work because he was in pain. He explained he initially returned to work because he could not live on $79 per week. The trial judge, in well-articulated verbal reasons for judgment, stated he found the plaintiff's complaint of pain truthful in that it was in accord with the medical evidence.
In its judgment the trial court found the plaintiff to be totally disabled and awarded compensation for as "long as the disability shall continue." The medical evidence does not support that plaintiff is totally unable to perform work of any character but rather that he was disabled at the time of trial from performing certain duties of a shipfitter his customary occupation.
In order to conform to the evidence and the benefits prescribed in R.S. 23:1221 for partial disability, we amend the judgment of the trial court to read:
IT IS ORDERED AND DECREED that there be judgment in favor of the plaintiff, Salvadore Biondolillo, Sr., and against the defendants, Geosource, Inc., and Commercial Union Insurance Company, for workmen's compensation benefits at the rate of $85 per week from December 16, 1975 for a period not to exceed 400 weeks during plaintiff's disability as a shipfitter, subject to a credit for all benefits heretofore paid pursuant to the Longshoremen's and Harbor Workers' Compensation Act and to all other credits authorized under R.S. 23:1221(3) of the Louisiana Workmen's Compensation Act. Defendants shall pay legal interest on all past-due compensation[1] benefits from the date of judicial demand, together with the expert fees of Doctors Kenneth Adatto and Earl Rozas, as determined by the trial court, and for all costs. In all other respects the judgment is affirmed.
AMENDED AND AS AMENDED AFFIRMED.

*290 BEER, Judge, dissenting.
The record discloses that:
1. Biondolillo was treated, from the time of his injury until the time of his final discharge, by Dr. Earl J. Rozas.
2. By April 30, 1976, Biondolillo was "walking well" and was experiencing no swelling of the injured foot. He returned to light duty, without any subsequent complaints to Dr. Rozas, on May 3, 1976.
3. By July 19, 1976, Biondolillo was released for full work duty by Dr. Rozas and did, in fact, return to full duty, again without any subsequent complaints to Dr. Rozas.
4. By August 16, 1976, he was discharged by Dr. Rozas who observed the following:
a. There was good function of the foot.
b. There was good range of motion.
c. X-rays showed "his foot was completely healed."
d. There was no swelling.
e. Biondolillo made no specific complaints about his foot.
f. He had reached maximum cure.
g. He could resume his regular occupation on a regular basis and carry out his work without any difficulty.
h. Reference to the manuals of the American Academy of Orthopedic Surgeons and the Disability Manual by the American Medical Association resulted in the calculation of permanent impairment of left foot of 10%.
Inherent in Dr. Rozas' testimony is the fact that the small percentage of impairment was not in any way disabling and was effectively dealt with by the providing of a certain type and design of work shoe which Biondolillo apparently used without any problem (insofar as any independent testimony is concerned) from the time that they were obtained for him, onward.
Biondolillo was, several months later, fired for reasons not in any way related to his injury, his alleged disability, or his work performance.
Months after that just one month prior to the trial of this case in the district court he was seen on one visit by Dr. Kenneth Adatto on January 24, 1977. In the course of that single examination, Dr. Adatto found well healed fractures of the third and fifth metatarsals. However, he also concluded that the left foot appeared to be cooler than the right foot and showed swelling and some "discoloration." From this, he determined that Biondolillo "was having what we call sympathetic dystrophy and it is also known as pseudo-atrophy or causalgia." He goes on to observe: "Nobody really knows the entire etiology of the disease but it's a dysfunction of what we call the autonomic nervous system."
This single visit to Dr. Adatto must, I believe, be put into proper perspective:
More than thirteen months after the accident and more than five months after being discharged by his treating physician and returning to full time employment at the same job from which he was several months later fired for unrelated reasons, Biondolillo obtainsjust one month prior to trial a single medical report (discussed above) from Dr. Adatto, who acknowledged that he would offer no treatment to Biondolillo because it is "beyond my realm." Further acknowledging that about 80% of the people who exhibit the symptomatology which he describes as existent in the course of his examination of Biondolillo "get under control with medication," he says only that he would be glad to refer Biondolillo "to some vascular surgeon for diagnosis and treatment." But, however much I search the record, I find no indication that this was ever done; or that there was even any additional examination, much less treatment, by any physician in whose "realm" the alleged condition would fall. Dr. Rozas, the treating physician, was never even consulted.
Thus, a chronological and factual analysis of this record compels a conclusion that Biondolillo returned to light work in May without any subsequent complaint to his treating physician, to full time work in July without any complaint to his treating physician *291 and continued in that full time work without any complaint to his treating physician, or to anyone else, until he was fired for totally unrelated reasons in November. He filed this workmen's compensation suit about two weeks after he was fired in December of 1976 and made one visit to Dr. Adatto in January of 1977, just before the trial of the case in February of 1977.
I conclude that the trial judge was manifestly in error in his finding that Biondolillo was permanently and totally disabled.
In my view, the record supports a finding that Biondolillo is entitled to state workmen's compensation payments of $85 per week for 35 and 3/7ths weeks. Technically, I concur in the majority's reduction of the trial court's judgment so as to permit the majority opinion to be handed down in technical compliance with La.Const. Article 5, Sec. 8(B). I, nevertheless, respectfully dissent from that part of the majority's opinion which awards compensation for any period greater than 35 and 3/7ths weeks.
NOTES
[1] We need not consider the original prayer for statutory penalties and attorney fees because counsel by stipulation limited the scope of this appeal to the issues discussed.