479 So.2d 453 (1985)
Theodore V. SZWEDT, et al.
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.
No. CA 84 0915.
Court of Appeal of Louisiana, First Circuit.
November 19, 1985.
Rehearing Denied December 26, 1985.
*454 H. Sanders O'Neal, Houma, for plaintiff and appellant Karen B. O'Neal.
Christopher H. Riviere, Thibodaux, for defendant and appellee State Farm Mut. Auto Ins. Co.
Before CARTER, SAVOIE and ALFORD, JJ.
SAVOIE, Judge.
Plaintiff, Karen Butler O'Neal, appeals the trial court's judgment awarding $50,000.00 damages for the wrongful death of her daughter, and its denial of penalties and attorney fees under LSA-R.S. 22:658.
On June 14, 1980, Rhonda Kim Szwedt was a passenger in a 1974 Dodge Colt automobile, owned by appellant and driven by Kevin J. Bergeron. The vehicle was proceeding east on Louisiana Highway 660 in Terrebonne Parish, while at the same time a 1971 Plymouth owned and operated by Loren Calloway was proceeding west on Highway 660. A head-on collision occurred between the two vehicles in the east-bound lane, resulting in the death of Rhonda Kim Szwedt. At the time of the accident Calloway did not have a liability insurance policy covering his vehicle. State Farm Mutual Automobile Insurance Company provided uninsured motorist coverage in its automobile liability insurance policy issued on the 1974 Dodge Colt in the amount of $100,000.00 per person and $300,000.00 per accident. State Farm also issued a policy of automobile liability insurance for a 1976 Ford LTD owned by Rhonda Kim Szwedt's step father, H. Sanders O'Neal, which provided uninsured motorist coverage in the amount of $300,000.00 per person and $300,000.00 per accident.
Plaintiffs Karen Butler O'Neal, H. Sanders O'Neal and Theodore V. Szwedt, Rhonda's father, filed suit against defendants Calloway and State Farm seeking damages for the wrongful death of Rhonda and asserting the survival action. Plaintiffs also sought penalties and attorney fees from State Farm, based on alleged arbitrary and unreasonable refusal to tender payment for damages under the uninsured motorist policy. State Farm filed a third party demand against Calloway and alternatively a petition of intervention against plaintiffs seeking indemnity and reimbursement, respectively, for any sums, which it paid or *455 should pay. Plaintiffs later filed an amending petition showing the existence of the State Farm policy on the 1976 Ford LTD, and claiming entitlement to "stack" the policies to increase the available limits of coverage.
The trial court found that the accident was caused solely by the negligence of Loren Calloway, and that Calloway was uninsured at the time. The court held defendants, State Farm and Calloway, liable jointly and in solido, to appellant and Theodore V. Szwedt in the amount of $50,000.00 per parent for the wrongful death of their daughter. The court also found that plaintiffs failed in their burden of proof, as to the survival action and the claim for penalties and attorney fees, and dismissed both claims. Since the award to plaintiffs was within the primary uninsured motorist coverage of the 1974 Dodge Colt, the court held the question of "stacking" of policies was moot. The court also found in favor of State Farm against third party defendant, Calloway, adjudging Calloway liable and indebted to State Farm for half the amount of judgment against State Farm.
From this judgment Karen Butler O'Neal alleges the following specifications of error:
1. The trial court failed to find that excess, uninsured motorist coverage existed and was applicable in deciding quantum.
2. The trial court awarded inadequate damages to your Appellant-Plaintiff of only $50,000.00 for the wrongful death of her daughter.
3. The trial court failed to find that State Farm Mutual Automobile Insurance Company, Appellee-Defendant, acted arbitrarily and capriciously in this case.[1]

SPECIFICATION OF ERROR NO. 1
Mrs. O'Neal asserts that the trial court erred in failing to find that Mr. O'Neal's uninsured motorist coverage was an excess policy and as such available under R.S. 22:1406(D)(1)(c).[2] The trial court in its written reasons for judgment stated:
Since the amount of awards to the parents are within the policy limits of the primary uninsured motorist policy coverage and since the court finds there is no recovery by plaintiffs under their action as survivors, the question of stacking of uninsured policies becomes moot. There is no liability resulting herefrom to the defendant, State Farm Mutual Automobile Insurance Company, on its uninsured motorist policy relative to the 1976 Ford LTD belonging to Mrs. Karen Butler O'Neal. But, if their awards for these damages had been in excess of the first uninsured motorist policy they are not entitled to stacking of the second uninsured motorist policy because they were not `occupants' as defined by the statute providing for stacking. See LSA-R.S. 22:1406(D)(1)(c).
*456 Mrs. O'Neal asserts that provisions of this statute do not limit stacking to an "occupant" in wrongful death actions. She contends that she is entitled to stack the U/M coverages of both of her State Farm policies.
Historically, Louisiana has had divergent views on whether or not stacking of U/M coverages is permissible in instances such as this. In 1977, our legislature addressed this issue in adopting Act 623, which is known as the "anti-stacking" provision. This act amended LSA-R.S. 22:1406(D)(1)(c) prohibiting stacking of multiple U/M coverages available to the same insured except under limited circumstances. Recovery under more than one policy was prohibited, except when the insured is injured while occupying an automobile not owned by said injured party. Then, the statutory exception permits the injured party to recover under the U/M coverage on the vehicle in which he is riding (as primary coverage) and also under one other U/M policy available to him (as excess coverage). See McKenzie, Louisiana Uninsured Motorist CoverageAfter Twenty years, 43 L.La. Rev. 691, 719 (1983).
The Supreme Court first interpreted the anti-stacking provision in Courville v. State Farm Mutual Automobile Insurance Co., 393 So.2d 703 (La.1981). There the court construed the exception to be applicable when the following statutory criteria are met: (1) the injured party is occupying an automobile not owned by him; (2) the U/M coverage on the vehicle in which the injured party was an occupant is primary; and, (3) should that primary U/M coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other U/M coverage available to him. Nall v. State Farm Mutual Automobile Insurance Co., 406 So.2d 216 (La.1981).
In the case sub judice, we find that the first and third requirements have not been met. Mrs. O'Neal was not an injured party occupying a non-owned vehicle; additionally the primary U/M coverage was not exhausted.
In order to meet the first requirement, Mrs. O'Neal must show that she was, 1) the injured party; 2) occupying the vehicle; 3) not the owner of the vehicle.
Obviously Mrs. O'Neal was an injured party under the wrongful death claim as a result of her daughter's death. She is also considered to be an occupant under the rational of Taylor v. Tanner, 442 So.2d 435 (La. 1983).
As to the final element of the first requirement, a vehicle not owned by said injured party, it is undisputed that Mrs. O'Neal owned the vehicle in question. The intent of the anti-stacking exception is to afford an insured, when riding with others, the protection of his own U/M coverage, in addition to whatever coverage is available on the vehicle in which he is a guest passenger. Courville v. State Farm Mutual Automobile Insurance Co., 386 So.2d 176 (La.App. 3rd Cir.1980). Under this exception the insured is no longer at the mercy of the foresight of everyone with whom he rides. Here, Mrs. O'Neal cannot resort to the exception because she is not at the mercy of a third party since she, as owner and insured, chose the applicable coverage. The stacking proposal she presents is one the anti-stacking statute sought specifically to prohibit.
Having found that Mrs. O'Neal has failed to meet the first requirement, we now turn to the third requirement, exhaustion of the primary coverage. The policy covering Mrs. O'Neal's vehicle was the primary policy in this case. See Breaux v. Louisiana Farm Bureau Mut. Ins. Co., 413 So.2d 988 (La.App. 1st Cir.), writ denied, 420 So.2d 453 (La.1982). The U/M limits of that policy were $100,000.00, which was the amount awarded by the trial court. Since the primary U/M coverage available to Mrs. O'Neal has not been exhausted we find that the final requirement to the anti-stacking has not been met.
Having concluded that Mrs. O'Neal has failed to meet the statutory requirements to the anti-stacking exception, we find this specification of error is without merit.

*457 QUANTUM

(Specification of Error No. 2)
The trial court awarded appellant $50,000.00 for the wrongful death of her daughter. Appellant complains that this award is inadequate and should be increased to a minimum of $70,000.00.
It is well settled in our jurisprudence that the trial court is granted much discretion in the awarding of damages, and its determination will not be disturbed absent manifest abuse of that discretion. Before a damage award may be questioned as inadequate or excessive, the appellate court must look to the individual circumstances of the particular case to determine whether the award was a clear abuse of the trier of fact's great discretion. Reck v. Stevens, 373 So.2d 498 (La.1979).
At the time of the accident, Rhonda Szwedt was 17 years old. Testimony of various family members and friends established that appellant and her daughter had a very close relationship and shared many activities. Testimony also establishes that Rhonda was engaged to be married in two months, and had plans to enter college in the fall. The trial court, in its written reasons for judgment, acknowledged the fact that Rhonda had a close relationship with both parents and took that fact into consideration in making the award.
After reviewing the facts and circumstances of this case and the jurisprudence, we cannot say that the trial court abused its great discretion. The trial court indicated its appreciation of the relationship that existed and awarded $50,000.00. We cannot say that the amount of the award is manifestly erroneous. See Burge v. State Through La. Dept. of Health, 469 So.2d 1223 (La.App. 1st Cir.1985).

PENALTIES AND ATTORNEY FEES

(Specification of Error No. 3)
Appellant asserts that the trial court erred, in failing to find that State Farm arbitrarily and capriciously failed to make payment in violation of LSA-R.S. 22:658[3]. As a result of State Farm's actions, appellant claims entitlement to statutory penalties and attorney's fees.
It is well settled in the jurisprudence that the burden is on the insured to prove insurer's lack of probable cause, arbitrariness or capriciousness in failing to pay a claim. Rushing v. Dairyland Insurance Co., 449 So.2d 511 (La.App. 1st Cir), affirmed 456 So.2d 559 (La.1984).
It is equally well established that the trial court's conclusion with regard to assessment of penalties and attorney's fees under LSA-R.S. 22:658 is in part a factual determination. It should not be disturbed in the absence of a finding that it is manifestly in error. Sibley v. Insured Lloyds, 442 So.2d 627 (La.App. 1st Cir.1983).
The trial court found that appellant failed to sustain the burden of proof that State Farm acted arbitrarily and capriciously. The court also found that State Farm made bonafide attempts in good faith to settle the various claims presented.
*458 We are well aware of the recent interpretation of La.R.S. 22:658 by our Supreme Court in McDill v. Utica Mutual Insurance Company, 475 So.2d 1085 (La. 1985). In determining whether or not an insurer had been fully appraised of the insured's claim the court stated:
To establish a "satisfactory proof of loss" of an uninsured/underinsured motorist's claim, the insured must establish that the insurer received sufficient facts which fully apprise the insurer that (1) the owner or operator of the other vehicle involved in the accident was uninsured or underinsured; (2) that he was at fault; (3) that such fault gave rise to damages; and (4) establish the extent of those damages.
We do not find that Mrs. O'Neal carried her burden of proving that State Farm received a "satisfactory proof of loss" of her U/M claim. First, there was initially a genuine issue as to whether or not there existed a liability policy covering the Calloway vehicle. Calloway apparently had a liability policy in effect at the time of the accident with Government Employees Insurance Co. However, the vehicle involved in the accident had not been reported to GEICO and added to that policy. Additionally, Calloway testified that he purchased the vehicle from his brother only three months prior to the accident and that his brother had maintained insurance on the car. At the time of the accident the vehicle was still registered in the brother's name, although Calloway believed his brother had dropped his insurance on the vehicle when he sold it. Thus, there were two possible sources of liability insurance available to Calloway at the time of the accident. The mere fact that both policies were subsequently found to be inapplicable does not imply arbitrariness and capriciousness on the part of State Farm, absent a showing of bad faith on State Farm's part.
Secondly, there was a difference of opinion between the parties as to the worth of the claim. It was not necessary for the plaintiffs to prove the exact extent of their damages, since general damages by their very nature are subjective and incapable of exact computation. McDill v. Utica Mutual Insurance Company, supra. However, in the instant case the dispute as to value was not between State Farm and the plaintiffs, but rather between the plaintiffs themselves. On April 1, 1981, counsel for plaintiff contacted State Farm with an intention to settle this matter. Counsel informed State Farm that he had authority to settle the matter in the amounts of $60,000 for Mrs. O'Neal and $40,000 for Mr. Szwedt. After some further negotiations between the parties,[4] State Farm tendered $100,000, the policy limits, to the plaintiffs. Plaintiffs then rejected this offer apparently because the plaintiffs could not agree upon the division of the funds. Mr. Szwedt felt that his claim was worth as much as Mrs. O'Neal's claim. Mr. O'Neal testified that the reason they rejected the $100,000 to settle the case was that they had reconsidered the case and felt there was more insurance involved. In effect, the plaintiffs were looking at State Farm's ability to pay as the basis of determining their damages, which factor is no longer considered in determining quantum. Rodriguez v. Traylor, 468 So.2d 1186 (La.1985). Upon rejection of the tender, State Farm proceeded to deposit the proceeds into the registry of the court in an attempt to avoid a claim that it acted arbitrarily and capriciously.
In McDill v. Utica Mutual Insurance Company, supra, the Supreme Court stated:
"Had Utica tendered some reasonable amount of the general damages, they would not have been arbitrary and capricious and the penalty provision would not apply."
Here the record reflects good faith negotiations on the part of State Farm to determine *459 the amount of the general damages followed by an unconditional tender of that amount.
Accordingly, we find no manifest error in the trial court's decision not to assess penalties and attorney's fees.

CONCLUSION
For the above and foregoing reasons, judgment of the trial court is affirmed. All costs of this appeal are to be assessed against appellant.
AFFIRMED.
CARTER, J., dissents and assigns reasons.
CARTER, Judge, dissenting.
I respectfully disagree with my learned brethrens' opinion for the following reasons.
In view of the special relationship between the mother and her deceased daughter, I am of the opinion that an award to the mother for her loss should be a minimum of $75,000.00 and justice would be better served if the award was increased to $100,000.00.
Either of the above awards, together with the award to the father, would therefore exceed the primary uninsured motorist coverage of the 1974 Dodge Colt. Therefore, I am of the opinion that the question of stacking is not moot.
Although obiter dicta in the majority opinion, I strongly disagree with the discussion as to "stacking uninsured motorist coverage." It is my opinion that the decisions in Courville[1], Nall[2], and Taylor[3], clearly dictate and correctly require stacking of the uninsured motorist coverage in the case sub judice.
The primary legislative objective of uninsured motorist coverage is to protect innocent victims of wrongdoers who are uninsured by providing such victims with a full recovery. Taylor, supra and cases cited therein. That objective is well served by the aforementioned cases.
I respectfully submit that it would be unrealistic to hold that a daughter could recover for her injuries under the excess UM coverage had she survived, but that her mother cannot recover under the excess UM coverage since she was killed. Subsection 1406 (D)(1)(c) is not violated, and the purpose of uninsured motorist insurance is fulfilled by allowing stacking in a case such as the instant one.
NOTES
[1] All other consolidated actions and issues were settled or, are not being appealed.
[2] LSA-R.S. 22:1406 (D)(1)(c) provides:

(c) If the insured has any limits of uninsured motorist coverage of automobile liability insurance, in accordance with the terms of Subsection D(1), then such limits of liability shall not be increased because of multiple motor vehicles covered under said policy of insurance and such limits of uninsured motorists coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; provided, however, that with respect to other insurance available, the policy of insurance or endorsement shall provide the following:
With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, the following priorities of recovery under uninsured motorist coverage shall apply:
(i) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;
(ii) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant.
[3] LSA-R.S. 22:658 provides:

All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees.
[4] There was some dispute between the parties as to the value of Theodore Szwedt's claim. Since he was an adoptive, non-custodial parent, who only saw Rhonda on an infrequent basis, State Farm felt his claim was worth only $30,000. After tenders of $90,000 and $95,000 were rejected, the policy limits were tendered.
[1] Courville v. State Farm Mut. Auto Ins. Co., 393 So.2d 703 (La.1981).
[2] Nall v. State Farm Mut. Auto Ins. Co., 406 So.2d 216 (La.1981).
[3] Taylor v. Tanner, 442 So.2d 435 (La.1983).