BOWES, Judge,
concurring in part and dissenting in part.
I concur with my learned brothers in their majority opinion insofar as it reverses that portion of the trial court’s judgment holding that National and INA provide primary and excess UM coverage, respectively. I dissent from the remainder of the opinion which makes findings on the validity of the rejections and further releases Farm Bureau from the suit on the basis of those findings.
In my opinion, it is far from clear that Emmett had no authority to reject UM coverage on behalf of either SPLC or LO-CAP. There are too many questions concerning interlocking directorships, interlocking ownership of subsidiaries, ratification, implied and apparent authority, estoppel (particularly because of past actions that were approved) and other considerations, for the trial court to find, by summary judgment, that Emmett could not have validly waived UM coverage. A recent decision of this court, Kemna v. Warren, 514 So.2d 237 (La.App. 5 Cir.1987), discusses the law and jurisprudence regarding implied authority to bind a corporation, as well as express or implied ratification of an act of a corporate official without authority with retroactive effect, all with reference to a corporate rejection of UM coverage. This case indicates to me that Emmett’s acts may well have been legally ratified by SPLC and LOCAP in the present situation.
*1041 In addition, one of my chief objections to the holding of the majority is that I find no statutory or jurisprudential authority which gives the trial judge the discretion to dismiss from a lawsuit a viable defendant whose liability is not an issue, simply on the grounds that his policy limits are not as high as those of a co-defendant.
It appears to be the position of Farm Bureau that if the UM rejections are invalid, and National is indeed the primary UM carrier, then INA as the excess carrier with substantially higher limits is automatically the excess carrier against whom Cavalier must proceed; further, if this argument is correct, then Farm Bureau seems to urge that it may be dismissed from the suit as providing no coverage. I am of the opinion that this interpretation of the statute and jurisprudence is patently erroneous as a matter of law.
Plaintiff impleaded Farm Bureau as an original defendant in his initial proceedings. Farm Bureau is a solidary obligor, along with National and INA, as to the tort action. See Burton v. Foret, 498 So.2d 706 (La.1986). A reading of R.S. 22:1406 appears to permit the injured victim his choice of excess UM coverage when more than one such policy is available to him. Furthermore, the jurisprudence supports this conclusion. This court, in Rogers v. Ambassador Ins. Co., 452 So.2d 261 (La.App. 5 Cir.1984), considered a situation in which a plaintiff sought to recover under a UM policy. Although the factual situation was somewhat different, the principle enunciated therein is sound and applicable. There we said:
... we consider that the statute which requires uninsured motorists coverage cannot be interpreted so as to deny that coverage to those persons who sought it. We see nothing to prevent Rogers from choosing to proceed against his own insurance company under this factual situation. We believe this conclusion to be supported by the decision in the recent case of Taylor v. Tanner, 442 So.2d 435 (La.1983), which permitted a claimant to choose a provision or policy with the highest limits amongst those available to him. As pointed out by the court:
“... the primary objective of the uninsured motorists scheme is to protect innocent victims of the negligent and financially irresponsible motorist by providing such victims with full recovery. Booth v. Fireman’s Fund Insurance Company [253 La. 521] 218 So.2d 580 (La.1968); Bond v. Commercial Union Assurance Company, 407 So.2d 401 (La.1981).”
See also Branch v. O’Brien, 396 So.2d 1372 (La.App. 2 Cir.1981), for the conclusion that amongst available UM carriers, plaintiff may choose to his advantage.
I find nothing in the law or jurisprudence which permits or gives the trial court authority to make the choice on behalf of plaintiff, who has not moved to dismiss Farm Bureau from the action.
It may appear to be obvious that in this particular case the plaintiff would make the same choice as the trial judge did for him and choose the policy with the highest limits. But this is not necessarily so. This plaintiff, and any plaintiff, may have reasons of his own for selecting a carrier (perhaps one with greater financial stability) with lower (but perfectly adequate) limits, rather than the “fattest cat” available. In any case, the law is clear that it is his choice and not that of the trial judge. Equally important, in my opinion, as this observation, is that the majority opinion sets a precedent for future use by allowing the trial judge to usurp the right of the plaintiff.
In addition, to being unauthorized procedurally, I believe that the judgment of the trial court declaring that Farm Bureau provided no coverage to be erroneous as a matter of law.
Taylor v. Tanner, 442 So.2d 435 (La.1983), cited in Rogers, supra, dealt with a plaintiff who entered into settlements with the tortfeasor’s liability insurer, the UM carrier of the automobile in which plaintiff was injured, and plaintiffs own UM carrier. Suit was pending against a third UM carrier with substantially higher limits than the two policies on which plaintiff had already collected. In reversing a summary *1042 judgment in favor of the third insurer, the Supreme Court stated:
We do not believe that the Legislature, by enacting a statute which limits stacking, intended to prohibit a claimant from conditionally accepting the tendered limits of a known excess policy with undisputed coverage and then litigating to determine whether another policy affords coverage with greater limits. Such an interpretation would be directly contrary to the primary objective of the uninsured motorist scheme — to protect innocent victims of the negligence of financially irresponsible motorists by providing such victims with full recovery. Booth v. Fireman’s Fund Insurance Company [253 La. 521], 218 So.2d 580 (La.1968); Bond v. Commercial Union Assurance Company, 407 So.2d 401 (La.1981). The result reached by the lower courts also penalizes the excess insurer who immediately tenders payment and rewards the excess insurer who is dilatory or evasive.
The purpose of the limitation of Subsection 1406D(1)(c)(ii) is to prevent a claimant from recovering more than the limits of any one of several excess uninsured motorist coverage provisions or policies available to him. Nevertheless, the claimant should be able to choose the provision or policy with the highest limits. The only question in this case is whether plaintiffs' decision to collect the proceeds of one excess policy tendered by that insurer was an irrevocable election which precludes recovery when plaintiffs later determined that another excess policy has higher limits.
Here, plaintiffs accepted the policy limits tendered by one excess insurer and reserved their rights against Home, while awaiting a determination during protracted litigation about possible coverage available under Home’s policy. In such a situation, the logical conclusion is that the interim acceptance constituted a conditional acceptance, pending a determination of whether the other excess insurer provided coverage with greater limits. [Emphasis supplied]
The court concluded that payment by one excess insurer is irrelevant to the liability of the other as long as the amount of excess uninsured motorist coverage does not exceed the limits of the highest excess policy, which is ultimately determined to be available to plaintiffs.
“As long as there is no ultimate recovery which increases the limits of available excess uninsured motorist coverage beyond that provided by any one policy, Subsection 1406 D (1)(c) is not violated, and the purpose of uninsured motorist insurance is fulfilled.”
Under the rationale of Taylor, it appears to me that Cavalier could, under certain circumstances, collect from both Farm Bureau and INA as excess insurers (provided that the rejection of UM coverage on behalf of INA is invalid), as long as the ultimate recovery by Cavalier does not exceed the ten million dollar limit provided by the INA policy.
In any event, I believe that it was manifest error for the trial judge to dismiss Farm Bureau from the action on the basis that INA provided excess coverage, thereby concluding that no other policies were available to Cavalier, and that, ergo, Farm Bureau provided no coverage. In my view, Farm Bureau is not entitled to summary judgment and I am perplexed by what I judge to be the inconsistency of the majority. On the one hand, they disapprove of the summary judgment because the trial judge “summarily decided that National provided primary coverage and INA provided excess coverage” and they remand the case for a trial on the merits regarding these issues. Yet, on the other hand, they approve of the trial judge summarily dismissing Farm Bureau, a viable defendant, from the suit without any request or motion from the plaintiff. Logic would seem to dictate that if the case is to be remanded, then it should be remanded for a full trial on the merits as to all insurers involved so that the plaintiff may be afforded his rightful choice.
In my opinion, there are grave issues of material fact existing in regard to the validity or invalidity of the rejections of the uninsured/underinsured motorist coverage by INA and National. This being so, it is *1043 logical that such questions materially affect the position taken by Farm Bureau in this appeal. Should one or both rejections be actually valid, plaintiff obviously still has Farm Bureau to proceed against. However, should Farm Bureau be dismissed from the lawsuit, as the majority does, this ruling will have operated so as to completely deprive the plaintiff of his right of action against that insurer, i.e., Farm Bureau.
Finally, an interesting and realistic question was raised at oral argument by counsel for INA when he said that if there was no proper authority for Emmett to reject U M coverage on behalf of INA and National, then, perhaps, for the same reason, there was no proper authority to take out the insurance policies at all, so there may be no insurance whatsoever in force for these two companies. This possibility would leave Farm Bureau as the only UM carrier for Cavalier to proceed against.
I firmly believe that all of these issues can be properly resolved only by a trial on the merits where evidence and testimony may be freely offered and fully developed by all concerned. Consequently, I would annul and set aside the summary judgment and remand the entire case for a full trial on the merits.
For the foregoing reasons, I respectfully concur and dissent, as outlined above.