577 So.2d 1147 (1991)
Cindy FAY, Individually and on Behalf of her Minor Children, Shannon Fay, Sheridan Fay and Shane Fay, and as Representative of the Estate of Gary Fay
v.
Dalton WILLIS, Donald P. Trosclair, the Greater New Orleans Expressway Commission, Liberty Mutual Insurance Company, and State Farm Automobile Insurance Company.
No. CA 901864.
Court of Appeal of Louisiana, First Circuit.
March 28, 1991.
Rehearing Denied May 2, 1991.
*1148 C. Gordon Johnson, Jr., New Orleans, for defendant-appellant State Farm Auto. Ins. Co.
Thomas E. Loehn, New Orleans, for plaintiff-appellee Cindy Fay.
Before SAVOIE, CRAIN and FOIL, JJ.
FOIL, Judge.
At issue in this case is whether plaintiffs are precluded from recovering under an uninsured motorist policy issued on a vehicle owned and operated by the insured at the time of the fatal accident, where plaintiffs accepted the uninsured motorist limits on a second policy covering the involved vehicle. We hold that the anti-stacking prohibition does not apply so as to bar recovery under the UM policy at issue in this case and affirm the trial court's resolution of the liability issue, but reverse its award of penalties and attorney's fees.

FACTS
Plaintiffs are the wife and children of Gary Fay, who was killed in an automobile accident by an uninsured motorist on February 13, 1987. At the time of the fatal accident, Fay, a Vice President of First National Bank of Covington, was travelling along the Greater New Orleans Expressway (Causeway) in a vehicle he owned, during the course and scope of his employment with the bank. Fay passed a vehicle being driven in a reckless manner by Dalton Willis and attempted to gain the attention of a Causeway policeman to inform him of the reckless motorist. Fay and a police officer pulled their vehicles into the right lane of the Causeway, exited, and stood between them as they awaited the approaching motorist. As Willis neared, he lost control of his vehicle, slammed into the police car, which overturned and struck Fay's car, which in turn knocked Fay into Lake Pontchartrain, where he drowned. Willis, who was uninsured, had a blood alcohol level of .23.
Plaintiffs made a demand against State Farm Mutual Automobile Insurance Company, which issued an automobile insurance policy to the Fays, providing bodily injury and UM coverage on the vehicle Fay owned and was operating at the time of the fatal accident, with UM limits of $100,000.00. This suit followed State Farm's refusal to tender the UM limits. Plaintiffs also sued Federal Insurance Company (Federal) which issued a business automobile liability policy to Fay's employer, with bodily injury and UM limits in the amount of one million dollars. Federal filed a motion for summary judgment claiming that neither Fay nor the involved vehicle were covered under the policy. The trial court granted the motion, and this court reversed. Fay v. Willis, 545 So.2d 1296 (La.App. 1st Cir.), writ denied, 550 So.2d 636 (La.1989).
This court specifically held that the vehicle driven by Fay was covered under the bodily injury portion of the Federal policy, and ruled that the insurance company's attempt to restrict UM coverage to only those vehicles owned by the bank was impermissible. Finding no valid waiver of mandatory UM coverage, this court concluded that UM coverage existed on the Fay vehicle up to the bodily injury limits.
*1149 Thereafter, Federal tendered its one million dollar limits to plaintiffs. Plaintiffs then filed a motion for partial summary judgment against State Farm on the issues of coverage, penalties and attorney's fees. State Farm argued that since plaintiffs accepted the limits on the Federal policy, their demand to recover the UM limits under a second policy of insurance constituted an impermissible "stacking" of UM coverages, in contravention of La.R.S. 22:1406(D)(1)(c), known as the "anti-stacking" statute.
The trial court granted the motion in plaintiffs' favor, ruling that the State Farm policy provided primary coverage on the involved vehicle. The court found that the case did not present a "stacking" problem which would preclude recovery under both UM policies. The court also found State Farm's refusal to tender its limits to be arbitrary and capricious and awarded penalties and attorney's fees. State Farm appealed, challenging the liability ruling and the award of penalties and attorney's fees.

DISCUSSION
State Farm does not dispute that its policy provides UM coverage on the vehicle owned and operated by Fay at the time of the fatal accident. Rather, State Farm bases its denial of liability on La.R.S. 22:1406(D)(1)(c), which at the time of the fatal accident in this case, provided as follows:
(c) If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subsection D(1), then such limits of liability shall not be increased because of multiple motor vehicles covered under said policy of insurance and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; provided, however, that with respect to other insurance available, the policy of insurance or endorsement shall provide the following:
With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, the following priorities of recovery under uninsured motorist coverage shall apply:
(i) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;
(ii) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant.
State Farm focuses on the language quoted in La.R.S. 22:1406(D)(1)(c) which states that "[i]f the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance ... such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy ..." as establishing a legislative prohibition against recovery under more than one UM policy where the insured is injured while operating an owned automobile. State Farm also focuses on the jurisprudence construing La.R.S. 22:1406(D)(1)(c), the "anti-stacking" provision.
The Supreme Court first construed the anti-stacking provision in Courville v. State Farm Mutual Automobile Insurance Company, 393 So.2d 703 (La.1981), as establishing the general rule that an insured who has insurance available under more than one UM policy may not cumulate, or stack the policies or coverages. The provision also contains a limited exception to the general prohibition against stacking, which permits a person who is injured while occupying a non-owned automobile to recover under the UM policy on the vehicle in which he was injured and an additional UM coverage available to him. The Supreme Court has stated that "[o]nly under this exception may the `limits of *1150 uninsured motorist coverage' be increased on account of the availability of more than one uninsured motorist coverage provision or policy." Taylor v. Tanner, 442 So.2d 435, 437 (La.1983).
Because Fay was operating an owned automobile at the time of the accident, State Farm contends the anti-stacking prohibition applies, thereby limiting Fay's beneficiaries to recovery under one available UM policy. State Farm also relies on Wyatt v. Robin, 518 So.2d 494 (La.1988), in support of its contention that plaintiffs may not recover under its policy because they had already selected from available UM coverage. In Wyatt, the insured was injured while driving an owned automobile, which was insured by a policy containing UM limits. The plaintiff in that case was also an omnibus insured under three other automobile policies, all of which had UM coverage available. After accepting the limits of the policy covering the involved vehicle, the plaintiff sought to recover the higher UM limits of one of the other available policies. At issue was whether the plaintiff could only recover under the policy on the vehicle he owned and was operating at the time of the accident. The Supreme Court held that although the anti-stacking provision limits the amount one can recover where several UM policies are available, it does not limit one's access to available coverage. The Court ruled that the insured was entitled to select among all available UM coverages the one he would prefer to recover under, and was not limited in this selection to the policy on the involved vehicle. State Farm contends that Wyatt establishes the rule that even though an insured occupying an owned automobile may select from all available UM coverages, he must select only one UM policy under which to recover.[1] Because plaintiffs have made that selection by accepting the one million dollar limits of the Federal policy, State Farm argues they are barred from recovering under an additional UM policy.
While State Farm's argument may be supported by a literal reading of the antistacking provision, we agree with plaintiffs' position that they are entitled to recover under both UM policies issued on the involved vehicle. In Pardue v. Dean, 515 So.2d 543 (La.App. 1st Cir.1987), this court concluded that where a plaintiff is injured while occupying an owned automobile, the anti-stacking statute does not prohibit recovery under more than one policy covering the involved vehicle. In Pardue, the plaintiff was injured while occupying an owned automobile upon which there was a policy of insurance providing UM coverage. The plaintiff alleged that the involved automobile was also covered under a business automobile policy issued to his employer. This court held that if plaintiff could prove that his automobile was also covered under the business policy, he could recover under both UM policies without violating the antistacking prohibition.[2]
*1151 Similarly, in a case involving the nonowned exception to the anti-stacking prohibition, La.R.S. 22:1406(D)(1)(c)(i) and (ii), the court allowed a plaintiff to cumulate four UM policies covering the vehicle in which she was riding. Capone v. King, 467 So.2d 574 (La.App. 5th Cir.), writs denied, 468 So.2d 1203, 1205 (La.1985). The exception to the prohibition allows an injured person to recover under the policy issued on the occupied vehicle as "primary" coverage, and under one additional UM policy as "excess" coverage. The court ruled that for the purpose of the exception, all policies covering the involved vehicle were primary, and therefore were all available to the plaintiff without reference to the rules on stacking. Id. at 579-580.
The State Farm policy at issue provides primary coverage on the Fay vehicle, whereas the Federal policy provides excess coverage. Plaintiffs are attempting to recover layers of insurance on the involved automobile. Our survey of the jurisprudence leads us to the conclusion that the anti-stacking statute was never intended to prohibit an insured from recovering layers of UM coverage on an owned vehicle involved in an accident. The anti-stacking statute was enacted to prohibit stacking of policies and coverage allowed by the courts prior to its enactment. Clement v. Continental Insurance Company, 430 So.2d 1212 (La.App. 1st Cir.), writ denied, 433 So.2d 1057 (La.1983). Prior to its enactment, courts had allowed stacking of coverage for multiple vehicles insured under one policy. See, eg., Barbin v. United States Fidelity and Guaranty Co., 315 So.2d 754 (La.1975). Additionally, stacking of UM coverages on separate policies issued on separate vehicles was authorized. Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972); Graham v. American Casualty Co. of Reading, Pa., 261 La. 85, 259 So.2d 22 (1972). According to leading scholars in the insurance field, the primary motivation behind the anti-stacking provision was to overturn jurisprudence which allowed stacking of multiple coverages on multiple vehicles, whether the vehicles were insured under the same or separate policies. It was not intended to preclude an insured from recovering layers of primary and excess UM coverage purchased for the same vehicle.[3] W. McKenzie and H. Johnson, III, Insurance Law and Practice, 15 Louisiana Civil Law Treatise § 125, at 265 (1986). See also Block v. Reliance Insurance Company, 433 So.2d 1040 (La.1983) and McKenzie, Louisiana Uninsured Motorist CoverageAfter Twenty Years, 43 La.L. Rev. 691, 717-719 (1983), for a history of the jurisprudence prior to the enactment of the anti-stacking statute.
Since the enactment of the anti-stacking statute, the courts have struck down a number of attempts by an insured injured while riding in an owned automobile to stack coverages on vehicles under multiple policies or coverage on multiple vehicles under a single policy. Hudson v. Thompson, 422 So.2d 640 (La.App. 3d Cir.1982) (precluding stacking of coverage on multiple vehicles under one policy of insurance); Cole v. State Farm Mutual Automobile Insurance Company, 427 So.2d 522 (La. App. 3d Cir.), writ denied, 433 So.2d 710 (La.1983) and Breaux v. Louisiana Farm Bureau Mutual Insurance Company, 413 So.2d 988 (La.App. 1st Cir.), writ denied, 420 So.2d 453 (La.1982) (precluding stacking of coverages on multiple vehicles insured under separate policies); Vincent v. State Farm Mutual Auto Ins. Co., 526 So.2d 818 (La.App. 3d Cir.), writ denied, 532 So.2d 150 (La.1988) (precluding stacking of UM coverages on the involved vehicle and other vehicles on which the insured was an omnibus insured). No court has ever struck down an attempt by an insured to recover layers of insurance on the vehicle involved in the accident; rather, attempts to recover all available UM coverage on the involved vehicle have been successful. *1152 Pardue v. Dean, 515 So.2d at 545; Capone v. King, 467 So.2d at 579-580.
Finally, the simple dictates of fairness convince us that the legislature never intended to give an insurance company in the position of State Farm a shield against its contractual obligation by enacting the antistacking statute. State Farm agreed to provide the Fays with UM coverage on the vehicle Gary Fay was operating at the time of his death. This insurance was paid for by the Fay family, who now seek to recover the benefits State Farm contractually obligated itself to pay by accepting premiums from the Fays. There is nothing in the policy to alert an insured that State Farm may not honor its obligation if the insured has other available insurance. Instead, the policy states that if the insured is injured while occupying an owned automobile, and there is other UM coverage available, the coverage on the involved vehicle "shall be available." State Farm should not be allowed to escape its contractual responsibility to the Fays, after having accepted payment for the very insurance coverage now being sought. See Pardue v. Dean, 515 So.2d at 545.
Based upon the Pardue case, the history of the anti-stacking statute and the jurisprudence construing it, we hold that the anti-stacking statute does not restrict the insured's right to recover layers of insurance on an owned automobile involved in an accident, and affirm that portion of the trial court's judgment awarding plaintiffs the $100,000.00 UM limits of the State Farm policy. However, we are constrained to overturn its award of penalties and attorney's fees. La.R.S. 22:658 authorizes an award of penalties and attorney's fees where the insurer acted arbitrarily, capriciously or without probable cause in refusing to pay a claim within 60 days of a satisfactory proof of loss. It may not be applied, however, when the insurer has a reasonable basis to defend against a claim. Kikendall v. American Progressive Insurance Company, 457 So.2d 53 (La.App. 1st Cir.1984). The language of the anti-stacking statute, coupled with the right of selection recognized by Wyatt and the lack of a definitive resolution by the Supreme Court of the issue presented herein gave State Farm a reasonable basis upon which to defend its claim. Therefore, the trial court erred in awarding penalties and attorney's fees.

CONCLUSION
Based on the foregoing, the judgment of the trial court is affirmed as to the award of the $100,000.00 UM limits of the policy, but is reversed as to the award for penalties and attorney's fees. Costs of this appeal are assessed to appellant.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED
CRAIN, J., concurs in the result.
NOTES
[1] After Wyatt, the legislature added La.R.S. 22:1406(D)(1)(e), Acts 1988, No. 203, § 1, which provides as follows:

(e) The uninsured motorist coverage does not apply to bodily injury, sickness, or disease, including death of an insured resulting therefrom, while occupying a motor vehicle owned by the insured if such motor vehicle is not described in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy. This provision shall not apply to uninsured motorist coverage provided in a policy that does not describe specific motor vehicles.
According to W. McKenzie and H. Johnson, III, Insurance Law and Practice, 15 Louisiana Civil Law Treatise 31 (1989), the purpose of this amendment was to cripple the selection right recognized in Wyatt, and is intended to limit a person who is injured while occupying an owned automobile to the UM coverage, if any, on that automobile. Under the facts of Wyatt, the insured could only recover under the UM policy on the occupied automobile. We note the absence of any language indicative of an intent on the part of the legislature to limit the insured to recovery under only one policy providing UM coverage on the involved vehicle.
[2] According to the "other insurance" clauses in the policies available to plaintiffs, the insurance coverage under the State Farm policy is clearly primary, whereas the coverage on the Federal policy apparently is excess. One of the rationales behind the Pardue decision was that all coverage on the involved vehicle was "primary" coverage. Depending on the language utilized in the policies which were not before the Pardue court, the policies may have indeed provided primary coverage. In this case, primary and excess layers of UM coverage are available to the insured on the involved automobile.
[3] Although the two layers of insurance in this case were not actually purchased by the Fays, we see no reason to reach a different result, especially with reference to the State Farm policy, purchased by the Fays for their protection.