396 So.2d 1372 (1981)
Annie Lou BRANCH et vir., Plaintiffs-Appellants,
v.
Edward J. O'BRIEN et al., Defendants-Appellees.
No. 14479.
Court of Appeal of Louisiana, Second Circuit.
March 23, 1981.
Writ Denied May 18, 1981.
*1373 Donald R. Miller, Shreveport, for plaintiffs-appellants, Annie Lou Branch and Glen Branch.
Lunn, Irion, Switzer, Johnson & Salley by Bernard S. Johnson, Shreveport, for defendant-appellant, State Farm Mutual Automobiles Insurance Co.
Before PRICE, HALL, and FRED W. JONES, Jr., JJ.
HALL, Judge.
Issues of uninsured motorist insurance coverage, medical payments coverage, causation of injuries and amount of damages are presented by these appeals taken by the plaintiffs and the defendant in this action arising out of an automobile accident. The appeals are from a judgment of the district court in favor of Annie Lou Branch and her husband against State Farm Mutual Automobile Insurance Company, the Branches' uninsured motorist insurer, for $15,844.50 special damages and $40,000 general damages, representing $50,000 awarded for Mrs. Branch's injuries less $10,000 policy limits previously paid by the liability insurer of the underinsured driver of the other automobile. For the reasons expressed in the district court's excellent reasons for judgment and in this opinion, the judgment is affirmed.
Background Facts
The accident giving rise to this action occurred on May 22, 1978. While stopped at an intersection, the automobile owned and driven by Mrs. Branch was struck from the rear by another automobile, causing relatively light damage to the Branch automobile. Mrs. Branch had previously been involved in a similar accident on March 13, 1978, some two months earlier. On that occasion an automobile in which Mrs. Branch was riding as a passenger was struck from the rear by another automobile, causing heavy damage.
Mrs. Branch, who had seen an orthopedic specialist prior to the first accident for neck and shoulder pain, was treated after the first accident by the same doctor who diagnosed her injury received in the first accident as a cervical strain. Following the second accident, out of which this suit arises, the doctor continued to treat Mrs. Branch for back problems, which worsened over a period of months. Ultimately, a laminectomy was done by a neurosurgeon, revealing a ruptured and displaced disc in the lower back.
Suit was originally filed against the drivers and insurers involved in both accidents. *1374 Since the first accident happened in another parish, an exception of improper venue filed by the defendants involved in the first accident was sustained and that part of the suit was transferred to the district court for the other parish. Plaintiffs settled their claims against the driver of the other car involved in the second accident and his liability insurer for the insurer's policy limits of $10,000.
The case went to trial against State Farm as the only remaining defendant. State Farm had issued four liability insurance policies to plaintiffs covering four separate vehicles. Each of the policies provided uninsured motorist coverage. Three of the policies, including the one covering the automobile which Mrs. Branch was driving in the second accident, contained liability and uninsured motorist limits of $10,000/20,000. One policy, covering a truck, contained liability and uninsured motorist limits of $100,000/300,000. Negligence on the part of the driver of the other automobile was stipulated.
After trial, the district court dealt with the causation, quantum, and coverage issues in a comprehensive opinion. Reviewing the evidence in detail, the court concluded, primarily based on the development of low back pain and disc-related symptoms after the second accident and the orthopedic specialist's opinion that the disc injury was caused by the second accident, that Mrs. Branch's injuries and disability were due to the second accident. The court awarded $50,000 general damages.
On the coverage issue, the court held that since uninsured motorist coverage is personal to the insured and is not related to a particular automobile the insured might be occupying at the time of an accident, each of the policies provided coverage and plaintiff was entitled to select the policy under which to seek recovery and could reach the policy with the highest limits.
Specification of Errors
Defendant specifies that the trial court erred: (1) in failing to give effect to LSA-R. S. 22:1406 D(1)(c) as amended by Act 623 of 1977 which prohibits stacking and, therefore, in failing to enforce a valid insurance contract between plaintiffs and defendant; and (2) in finding that plaintiffs proved by a preponderance of the evidence that Mrs. Branch's injuries and damages were caused by the accident giving rise to this suit.
Plaintiffs specify that the trial court erred: (1) in not awarding Mrs. Branch $100,000 general damages in view of the nature and extent of her injuries and pain and suffering; (2) in failing to award Mrs. Branch damages for loss of future earning capacity; (3) in not awarding plaintiff damages for future medical expenses; (4) in failing to allow recovery under the medical payments provisions of three liability insurance policies issued by defendant to plaintiffs covering vehicles other than the automobile she was driving at the time of the accident; and (5) in failing to award plaintiffs penalties and attorney fees for defendant's arbitrary and capricious refusal to pay benefits due under the insurance policies.
Uninsured Motorist Coverage
Defendant contends the policy issued covering the truck with $100,000/300,000 limits does not provide coverage for this accident in which the plaintiff insured was driving an automobile owned by her and not listed in the policy, under the following exclusionary clause contained in the policy:
"This policy does not apply ...
(a) to bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the named insured ..."
Defendant further contends that under LSA-R.S. 22:1406 D(1)(c) plaintiff cannot stack multiple uninsured motorist policies and is limited to recovery under the policy issued covering the automobile plaintiff was occupying at the time of the accident. Plaintiffs argue that the exclusionary clause in the policy is not applicable or is void and that they are not attempting to "stack" policies, but are only "selecting" one of the four policies, all of which provide coverage, and are entitled to select the policy with the highest limits.
LSA-R.S. 22:1406 D(1) provides:
"D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.

*1375 "(1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.
"(b) Any insurer delivering or issuing an automobile liability insurance policy referred to herein shall also permit the insured, at his written request, to increase the coverage applicable to uninsured motor vehicles provided for herein to any amount.
"(c) If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subsection D(1), then such limits of liability shall not be increased because of multiple motor vehicles covered under said policy of insurance and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; provided, however, that with respect to other insurance available, the policy of insurance or endorsement shall provide the following:
"With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, the following priorities of recovery under uninsured motorist coverage shall apply:
"(i) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;
"(ii) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant."
LSA-R.S. 22:1406 D(1) was amended by Act 623 of 1977 to add the language contained in subsection D(1)(c) for the purpose of preventing "stacking" of policies and coverage, which had been allowed under decisions interpreting the statute prior to the amendment.
LSA-R.S. 22:1406 D(1)(a) requires an insurer who issues a liability policy to provide uninsured motorist coverage with limits equal to the liability limits. Uninsured motorist coverage does not depend on use of a listed insured automobile, but is to protect the insured from damage caused by a negligent uninsured motorist regardless of whether the insured is occupying an automobile listed in the policy, another automobile owned or unowned, or is not occupying an automobile at all. Barbin v. United States Fidelity & Guaranty Company, 315 So.2d 754 (La.1975); Graham v. American Casualty Company of Reading, Pennsylvania, 261 La. 85, 259 So.2d 22 (1972); Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972); Booth v. Fireman's Fund Insurance Company, 253 La. 521, 218 So.2d *1376 580 (1968); Griffin v. Armond, 358 So.2d 647 (La.App. 1st Cir. 1978); Guillot v. Travelers Indemnity Company, 338 So.2d 334 (La.App. 3d Cir. 1976), writ refused 341 So.2d 408 (La.1977); Thomas v. Nelson, 295 So.2d 847 (La.App. 1st Cir. 1974), writ refused 299 So.2d 791 (La.1974); Elledge v. Warren, 263 So.2d 912 (La.App. 3d Cir. 1972), writ refused 262 La. 1096, 266 So.2d 223 (1972).
Because of this statutory requirement, and the public policy it expresses, clauses excluding or reducing coverage while an insured is occupying an automobile not listed in the policy, whether owned or unowned, have been held to be contrary to the statute and public policy and void. An exclusionary clause identical or substantially identical to the one relied on by defendant in this case was declared void in the Elledge, Thomas, Guillot and Griffin cases cited above. Nothing in the 1977 amendment to LSA-R.S. 22:1406 dealing with "stacking" changed the statutory requirement and public policy or the rule of the cases interpreting the statute in this respect. The exclusionary clause here is void.
Thus, all four policies provide uninsured motorist coverage to plaintiff. Under prior law and cases, plaintiff could have "stacked" the policies and recovered the combined limits of each. Barbin v. United States Fidelity & Guaranty Company, supra; Graham v. American Casualty Company of Reading, Pennsylvania, supra; Deane v. McGee, supra. Did the 1977 amendment change this?
The first paragraph of LSA-R.S. 22:1406 D(1)(c) clearly prohibits increasing the limits of a policy where more than one vehicle is included in the policy. The language in that paragraph about not increasing the limits where more than one policy is available to the insured is not clear because "stacking" in that situation has never involved increasing the limits of a policy but has allowed collecting the stated limits of each policy. However, the Supreme Court in Courville v. State Farm Mutual Automobile Insurance Company, et al., 393 So.2d 703 (La.1981) held: "... the first paragraph of the Act provides the general rule that an insured who has insurance available to him under more than one uninsured motorist policy may not stack, ...", subject to the limited exception dealt with in Courville where the insured occupies a nonowned automobile, which is not the case here. The Supreme Court pronouncement is a reasonable interpretation of the not-so-clear language of the 1977 amendment and is in keeping with the recognized legislative intent to prohibit "stacking" of policies or coverages.
Plaintiff here cannot stack the four policies and collect the limits of each and does not attempt to do so. As previously stated, however, the 1977 amendment did not change the fact that each of the policies provides coverage to the full amount of each policy's limits. Nothing in the amendment makes coverage under any one of the policies exclusive of that provided by the others. Nothing in the amendment says the policy or coverage on the vehicle in which the injured party was an occupant is the only policy which provides coverage. In fact, the language of the statute as amended is to the contrary; it recognizes that more than one policy or coverage may be available to the insured, and prohibits "stacking" in that instance. It does not purport to regulate which policy is primary or exclusive, except in the case of an insured occupying a nonowned automobile, which is not the situation here. Since each policy provides coverage, there is no statutory reason why plaintiffs should not be able to select the policy under which they seek recovery, even though they are prohibited from recovering the combined full limits of all available policies.
As applied to the circumstances of this case, there is no provision in any of the four policies, all of which contain identical provisions, providing that the coverage of one policy shall be primary to or exclusive of that provided by the others. The excess insurance paragraph of the "Other Insurance" clause[1] is not applicable here because *1377 it deals with injury to an insured while occupying a nonowned automobile. The pro rata paragraph of the "Other Insurance" clause would seem to be applicable because it provides that where the insured has other similar insurance available to him, the highest limits of the available policies govern, and each policy is to bear its pro rata share of the loss. Application of the clause here is inconsequential, however, because the available insurance policies were all written by the same company.
Plaintiff is entitled to recover up to the highest limits of the available policies. It matters not in this case, where all policies were issued by the same insurer, whether plaintiff is said to recover under the one policy providing $100,000 limits, or pro rata under each of the four policies. Plaintiff is entitled to judgment against the uninsured motorist insurer, State Farm, for the full amount of her damages, not to exceed the $100,000 policy limits.
Medical Payments Coverage
Plaintiffs contend they should recover the full amount of medical payments coverage provided by each of the four insurance policies. Defendant contends, and the trial court held, that only the policy covering the automobile being driven by Mrs. Branch at the time of the accident provides medical payments coverage for expenses incurred in this accident.
Each policy provides for payment of all reasonable medical expenses to an insured who sustains bodily injury caused by an accident while occupying "the owned automobile" or while occupying a nonowned automobile. "Owned automobile" is defined as "a private passenger ... automobile described in this policy for which a specific premium charge indicates that coverage is afforded." Therefore, medical payment coverage is provided only in the policy covering and describing the automobile the insured was occupying at the time of the accident. She was not occupying an owned automobile or a nonowned automobile within the definitions contained in the other three policies, which described and covered vehicles owned by the insured other than the one she was occupying at the time of the accident.
There is no statutory or policy requirement relating to medical payment coverage which overrides or negates the express provisions of the policies, which should be given effect as written. The other three policies do not provide medical payment coverage. See Phillips v. Hartford Accident & Indemnity Co., 325 So.2d 638 (La.App. 1st Cir. 1976).
Causation
Defendant contends the trial court erred in concluding that the disc injury was caused by the second accident, arguing there is not substantial evidence to support that conclusion and that it is more likely that the injury existed before either accident or was caused by the first accident which involved heavy damage to the vehicles.
Substantial evidence supports the conclusion that Mrs. Branch's disc injury was caused by the second accident. Although she had congenital spondylolisthesis and some arthritic changes prior to either accident, her problem and symptoms at that time were confined for the most part to the upper back, neck and shoulders, and were fairly minimal. After the first accident, the diagnosis was cervical strain, and although there was casual mention in one report of lower back pain, the problems were related almost entirely to the upper *1378 back and neck. Mrs. Branch continued to work.
After her second accident, over a period of months, Mrs. Branch's symptoms worsened, with pain associated more with the lower back, and disc-related symptoms such as radiating pain in the legs developed. The operation disclosed the disc injury in the lower back.
The orthopedic specialist who treated Mrs. Branch from before either accident to the time of her surgery expressed a firm medical opinion that the disc injury was caused by the second accident. Defendant attacks his opinion as not being supported by medical facts. To the contrary, the doctor's opinion is supported by the facts, particularly the time sequence of the development of Mrs. Branch's symptoms. The neurosurgeon who performed the operation declined to express an opinion as to the cause of the disc injury, other than to say it was caused by trauma, but stated that the orthopedic specialist who had followed the patient over a period of time would be in better position to give an opinion.
Defendant emphasizes that the first accident involved much more extensive damage to the automobiles, indicating a greater impact, and making it more probable that the disc injury was sustained in the first accident. Both doctors stated firmly that the extent of damage to automobiles alone bears little or no relationship to the likelihood of a disc injury being sustained by a person occupying a vehicle because so many factors unrelated to physical damage to the vehicles are involved.
As previously stated, the conclusion of the district court that the disc injury was caused by the second accident is supported by substantial evidencethe preponderance of the evidenceand is correct.
Quantum
Plaintiff contends the $50,000 award for general damages is inadequate and should be increased to $100,000. Plaintiff further contends the trial court erred in failing to make awards for future medical expense and for loss of future earning capacity.
At the time of the accident in May 1978, Mrs. Branch, then 40 or 41 years old, was employed at Western Electric. She was also a busy mother, wife, and homemaker. Her pain and disability due to her injury progressively worsened and she had to quit work in August. She was hospitalized three times between August and October, first for conservative treatment including traction, second for a myelogram and more treatment, and last for the surgical procedure. She spent about seven months at home recuperating before returning to her employment on April 30, 1979. During much of that time she was unable to tend to her usual household duties, or to enjoy the other activities she normally engaged in with her husband and family. At the time of trial, in January, 1980, she was still unable to do many of the more strenuous activities. The neurosurgeon gave her a 20 percent disability of the body as a whole. She wears a corset or brace, which is uncomfortable and is embarrassing to her. The neurosurgeon is of the opinion she will require a fusion of the vertebrae in her back in the future, but ascribes the fusion and the wearing of the brace to her congenital problem, not to the disc injury.
In support of plaintiffs' argument that the award for general damages should be increased to $100,000, several cases are cited which involved similar injuries and larger awards. On the other side of the coin, defendant cites several cases involving similar injuries and smaller awards.
There is no mass of previous similar cases which indicates the $50,000 award made by the trial court is below the range of its discretion. There was no abuse of the trial court's much discretion in fixing the award of general damages in that amount.
Plaintiffs argue on appeal that the trial court should have made an award for loss or impairment of future earning capacity.
In this case the evidence shows that Mrs. Branch made a good recovery from the disc injury and surgery. She went back to work and had been working regularly for about eight months at the time of trial. The evidence does not establish that her *1379 capacity to work in the future is impaired by reason of the accident. There was no abuse of discretion by the trial court in refusing to make a separate award of damages in this respect.
Plaintiffs contend also that the trial court erred in failing to make an award for future medical expenses, particularly in view of the testimony of the neurosurgeon that she would probably need to have a fusion of the vertebrae in her unstable back at some time in the future. The trial court found, based on the medical testimony, that the possible future surgery was not related to the disc injury but was related to Mrs. Branch's congenital back problems which were likely to be aggravated in the future by the aging process and future trauma. We find no error in this factual determination by the trial court.
Penalties and Attorney Fees
Plaintiffs are not entitled on appeal to have the judgment amended to award penalties and attorney fees because they did not pray for recovery of penalties and attorney fees in their original and supplemental petitions filed in this action. Further, there was no arbitrary or capricious failure to pay on the part of defendant.
Decree
The judgment of the district court is affirmed. Costs of the appeal are assessed to State Farm Mutual Automobile Insurance Company.
Affirmed.
NOTES
[1] "Other Insurance. With respect to bodily injury to an insured while occupying an automobile not owned by the principal named insured, the insurance under this endorsement shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."