606 So.2d 923 (1992)
Dianne Martin HULL, Plaintiff-Appellee,
v.
LOUISIANA INDEMNITY, et al., Defendants-Appellants.
No. 91-663.
Court of Appeal of Louisiana, Third Circuit.
October 6, 1992.
Guglielmo, Lopez, Tuttle, Hunter & Jarrell, Gina B. Tuttle, Opelousas, for defendant-appellant.
Don Richard, Opelousas, for plaintiff-appellee.
Dauzat, Falgoust, Caviness, Bienvenu & Stipe, Jerry Falgoust, Opelousas, for defendant-appellee, Louisiana Indem.
Before GUIDRY and LABORDE, JJ., and SALOOM[*], J. Pro Tem.
*924 KALISTE J. SALOOM, Jr., Judge Pro Tem.
The question presented for review in this appeal concerns the relationship between three separate uninsured motorist providers.
Plaintiff, Dianne Martin Hull, is the surviving mother of Dana Denise Hull who was killed in an automobile accident on August 8, 1987. Dana Denise Hull was a guest passenger in a 1980 Ford pickup truck which was owned by Mardell Sibley and was driven by her brother, Mark Sibley, at the time of the accident. The vehicle was insured by Louisiana Indemnity Company which provided limits of $10,000.00 per person /$20,000.00 per accident and uninsured motorist limits of the same amount. Allstate Insurance Company provided coverage for Mark Sibley with liability limits of $25,000.00 per person/$50,000.00 per accident and uninsured motorist limits of the same amount.
Uninsured motorist coverage was provided for Dana Denise Hull under three separate policies. Fidelity and Guaranty Insurance Underwriters, Inc., provided coverage to the paternal grandfather of the deceased in the amount of $200,000.00. Associated Indemnity Corporation provided coverage to the aunt of the deceased. This policy had a $100,000.00 limit. Valley Forge provided coverage to the mother of the deceased with a $50,000.00 policy limit. Each policy was issued to a member of the Hull household and Dana was an omnibus insured under each policy.
Plaintiff filed a wrongful death action against the liability insurers and Fidelity and Guaranty. Fidelity and Guaranty filed a third party demand against Associated Indemnity and Valley Forge. Ultimately, a settlement was reached in which the liability insurers paid under their policies and were dismissed. Fidelity and Guaranty paid $144,333.33 under its uninsured motorist policy.
Fidelity and Guaranty proceeded with its third party claim for contribution or indemnity against Associated Indemnity and Valley Forge. Associated Indemnity and Valley Forge filed a motion for summary judgment and an exception of no cause of action which were denied by the trial court. Associated Indemnity applied for a writ of certiorari to the this court. Certiorari was denied citing no error of law and the case was remanded for trial. After argument on the merits, the trial court ordered Valley Forge and Associated Indemnity to pay their pro rata share of the $143,333.33 which Fidelity and Guaranty had paid. Valley Forge and Associated Indemnity appealed, but Associated Indemnity settled with Fidelity and Guaranty. The judgment of the trial court is now final as to Associated Indemnity. Valley Forge's appeal is still before us.
The sole issue for consideration is the pro rata sharing of the obligation, among the various uninsured motorists carriers to pay an uninsured motorist's claim. Although there is obiter dictum in other cases which may serve as our guide, it appears that this issue is res nova in Louisiana.
It is quite clear that the plaintiff could have sued any of the three uninsured motorist carriers. However, under the provisions of the Louisiana Uninsured Motorist Statute, LSA-R.S. 22:1406(D)(1)(c), plaintiff could not stack uninsured motorist coverage. In the instant case plaintiff sued and eventually settled with Fidelity and Guaranty. Therefore, plaintiff has exercised her option under LSA-R.S. 1406(D)(1)(c). What is not clear and is presently before the court is whether the uninsured motorist carrier which is selected by a plaintiff under the anti-stacking provision can seek contribution or indemnity from other uninsured motorist carriers.
Appellants contend that there is no authority for the action of the trial court. Valley Forge's argument is that since plaintiff has made her selection under the anti-stacking provision and Valley Forge cannot be liable to the plaintiff, then they cannot be liable to Fidelity and Guaranty for contribution.
Fidelity and Guaranty argues that both the Associated Indemnity policy and the Valley Forge policy provided for pro rata *925 sharing of coverage in their "Other Insurance" clauses which state:
"If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance."
Fidelity and Guaranty further contends that this is precisely the situation contemplated by the "Other Insurance" clause.
The trial court based its decision on the "Other Insurance" provisions and other Louisiana authorities that have dealt with similar issues. The trial court cited Taylor v. Tanner, 442 So.2d 435 (La.1983), which was a case where the plaintiff had accepted a compromise with one excess insurer. When the Taylor plaintiffs sought to proceed against an uninsured motorist insurer which provided more coverage, that uninsured motorist carrier moved for summary judgment on the basis of the anti-stacking provision. The trial and appellate courts upheld the summary judgment. Reversing both courts, the Supreme Court allowed the Taylor plaintiffs to proceed against the other uninsured motorist carrier. Most important to the issue before the court is footnote seven which states:
"At the trial on the merits, the trial court may be called upon to decide whether the plaintiff will have to refund the amount previously accepted from the other excess insurer, or whether the total amount of available excess insurance must be prorated so as to award the highest limit provided by any one policy, or whether Home is simply entitled to some sort of credit. Or perhaps the trial court may order some other disposition. We need not address this issue in our present review of a summary judgment denying plaintiffs the right to proceed against Home."
The trial court also relied on a suggestion made in a law article by McKensie and Johnson, 45 La.L.Rev. 325, at p. 336, that a pro rata distribution could be justified under the language of LSA-R.S. 22:1406(D)(1)(c). McKensie and Johnson opined that the statute could be read as limiting the amount of recovery and not the source of the funds. The commentators suggested that pro rata distribution appears to be an equitable allocation of responsibility among insurers. They make the same suggestion in their insurance treatise. 15 Louisiana Civil Law Treatise, § 231, pp. 432-434.
We approve the approach taken by the trial court in this situation. Otherwise the uninsured motorist carrier selected by the plaintiff will bear the full burden of compensation while other uninsured motorist carriers pay nothing. We observe that LSA-R.S. 22:1406(D)(1)(c) was enacted to prevent plaintiffs from recovering the maximum under each policy. The clear intent of the legislature was to provide tort victims with the option to pursue the highest uninsured motorist policy. The legislation does not address the issue of contribution or indemnity by the uninsured motorist carrier(s) that is (are) not selected to the uninsured motorist carrier which is selected.
We find that the weight of authority favors the appellee in this case. In each case involving the issue of contribution or indemnity among uninsured motorist carriers the courts of our state have suggested that pro rata distribution is a viable option.
The Supreme Court made this suggestion in Taylor in footnote number seven, supra. Furthermore, in Wyatt v. Robin, 509 So.2d 746 (La.App. 3d Cir.), writ granted, 512 So.2d 446 (La.1987), reversed and remanded in 518 So.2d 494 (La.1988), decided five years after Taylor, the Court dealt with a situation similar to that in Taylor. In Wyatt the plaintiff had four uninsured motorist policies from which to choose. The plaintiff accepted the policy limits of $5,00.00 from one of the carriers, while reserving its rights as to the other three. The other insurers moved for summary judgment on the grounds of the anti-stacking provision of LSA-R.S. 22:1406. The trial court granted the motion and dismissed plaintiff's case as to the remaining insurers. This court affirmed. The Supreme Court reversed. The Supreme Court *926 reaffirmed its Taylor holding and remanded the case. In footnote number three to the Wyatt opinion the Court cited footnote number seven from their Taylor opinion as authority for the proceedings on remand.
In Branch v. O'Brien, 396 So.2d 1372 (La.App. 2d Cir.), writ denied, 400 So.2d 905 (La.1981), the Second Circuit dealt with a situation where the plaintiff had four uninsured motorist policies issued by the same insurer from which to choose. The Second Circuit stated:
"The pro rata paragraph of the `Other Insurance' clause would seem to be applicable because it provides that where the insured has other similar insurance available to him, the highest limits of the available policies govern, and each policy is to bear its pro rata share of the loss. Application of the clause here is inconsequential, however, because the available insurance policies were all written by the same company.
Plaintiff is entitled to recover up to the highest limits of the available policies. It matters not in this case, where all policies were issued by the same insurer, whether plaintiff is said to recover under the one policy providing $100,000 limits, or pro rata under each of the four policies."
In the present case there are three different uninsured motorist carriers and it appears that the pro rata paragraph of the "Other Insurance" clause should apply.
In Clement v. Continental Insurance Co., 430 So.2d 1212 (La.App. 1st Cir.), writ denied, 433 So.2d 1057 (La.1983), the First Circuit followed Branch. The plaintiff was covered by three uninsured motorist policies written by the same insurer. The First Circuit quoted the cited language from Branch with approval.
In the case at bar plaintiff has selected the uninsured motorist policy with the highest limits. The claim has been paid. The insurer who was selected has asked for contribution or indemnity under the "Other Insurance" clauses contained in the other two uninsured motorist policies. The trial court granted the relief requested. We find nothing in the anti-stacking provision of LSA-R.S. 22:1406(D)(1)(c), the policies or the case law which persuades us that the trial court was in error.
We agree with and adopt the theory of McKenzie and Johnson, supra, that LSA-R.S. 22:1406(D)(1)(c), can be reasonably interpreted to limit the amount of recovery, but not the source of funds. We also agree that where "several insurers provide excess coverage, pro ration appears to be an equitable method" in allocating responsibility. Id., footnote 39 at p. 336.
All three uninsured motorist carriers were obligated under their policies to provide coverage in this case. An obligation is said to be solidary among the debtors when they are obliged to the same thing, so that each may be compelled for the whole, and when payment by one exonerates the other toward the creditor. Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La.1982).
In the instant case all three uninsured motorist carriers were obligated to pay plaintiff's uninsured motorist claim. Therefore, all of the uninsured motorist carriers were solidarily liable to plaintiff. Payment by Fidelity and Guarantee extinguished the debt as to plaintiff. However, Fidelity and Guaranty became subrogated to plaintiff's rights against the other two uninsured motorist carriers.[1]
Subrogation may be legal or conventional. La. C.C. art. 1825. Fidelity and Guaranty's policy provides for subrogation in case of payment. A similar provision was upheld as a conventional subrogation in Bond v. Commercial Union Assurance. Co., 407 So.2d 401 (La.1981) and Southern Farm Bureau Casualty Ins. Co. v. Sonnier, 406 So.2d 178 (La.1981). Legal subrogation takes place when an obligor pays a debt he owes with others or for others and who has recourse against those others as a result of the payment. La.C.C. art. *927 1829(3). Great Southwest Fire Insurance Co. v. CNA Insurance Co., 557 So.2d 966 (La.1990).
In the case at bar plaintiff had the right to sue any or all of the uninsured motorist carriers under Taylor and Wyatt as long as her recovery did not exceed the limits of the highest policy. If plaintiff had sued all three carriers, the "Other Insurance" clauses in all three policies provided for a pro rata distribution. As a conventional or legal subrogee, Fidelity and Guaranty can seek contribution from the non paying obligors. We find nothing in the anti-stacking statute that alters this conclusion. Likewise, we find no error in the ruling of the trial court.
Therefore, we affirm the judgment of the trial court. Costs of this appeal are assessed to appellant, Valley Forge Insurance Company.
AFFIRMED.
NOTES
[*] Honorable Kaliste J. Saloom, Jr., participated in this decision by appointment of the Louisiana Supreme Court, as Judge Pro Tempore.
[1] In Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972), the Louisiana Supreme Court interprets the "pro rata" provision of the "Other Insurance" clause to permit pro ration among other insurers.