| iLABORDE, Judge.
A lending institution signed a commitment letter addressed to a contractor indicating *847 that it would pay the contractor directly for work completed, provided its requests for payment were signed by the architect in charge.
The contractor appeals from an adverse judgment wherein the trial court concluded that the bank’s payment of the loan to the building owner extinguished any obligation the bank may have owed the contractor. We reverse this portion of the judgment. In issuing its commitment letter, the bank assumed its customer’s obligation.
Nonetheless, the outcome of these proceedings is left unaffected. Shortly before trial, plaintiff acquired the building from the building owner in exchange for its agreement to forgive the landowner of any liability whatsoever to the bank, and the bank as legal subrogee is entitled to rely on this release as to its assumed obligation.
I -¿Question of Law
This contractual dispute arose after the bank paid the last two installments in the amount of $48,572.34 directly to the building’s owner, who then failed to pay the contractor for work certified by the architect. The question is who between the bank and the contractor is to bear the losses occasioned by the building owner’s failure to forward the funds.
FACTS
Frank DeGraauw and Jack Cormier decided to construct a building on certain property they co-owned on Doucet Road in Lafayette. To do so, with each other’s knowledge they retained different contractors. Plaintiff, Ru-dick Company, Inc., was hired to construct DeGraauw’s suite.
Eventually, it was decided that plaintiff would obtain all necessary permits and prepare the entire construction site, then stand aside while the other contractor poured the concrete slab for both suites. Afterwards, each contractor would build the suite for which it was individually responsible.
Consistent with the plans, a building permit was issued to plaintiff October 9, 1991, who then prepared the site for his client and the other contractor. With the knowledge of the co-owners, these site preparations began before plaintiff received a signed construction contract from DeGraauw.
At some uncertain point prior to the November 4 closing, the contractor advised De-Graauw that in order for .him to construct DeGraauw’s suite, he would require a commitment letter from DeGraauw’s financier. DeGraauw honored plaintiffs request, and the bank financing the project issued the original commitment letter whose facsimile is set forth below:
*848 [[Image here]]
On the first three occasions payment was sought, no difficulties were encountered. Plaintiff received full satisfaction even though each Application and Certificate so completed may have been forwarded not to the bank, but to the building owner. |4The contractor certified that it had completed some of the contracted work, then issued its application to the project architect, who inspected the site and issued the requisite certificate for payment by the bank. In accordance with their agreement, the parties used standard forms such as the one attached as an exhibit to this opinion.
With the possible exception of money later received by settlement with DeGraauw, however, the contractor was never paid on the fourth and fifth requests. Although these two requests, like the first three, had been certified by the architect and paid to De-Graauw, DeGraauw failed to transmit the funds to Rudick.
*849 This lawsuit ensued. Plaintiff, Rudick Company, filed suit against the bank and DeGraauw for the $48,572.34 certified by the architect. Plaintiff and the landowner settled. Plaintiff received the building and some cash in exchange for its agreement to hold the landowner harmless for any claims raised by either it or the bank, apparently going so far as to agree to take steps necessary to secure a release from the bank for the landowner. While these proceedings therefore directly concern only plaintiffs claims against the bank, its conclusion is affected greatly by the agreement between plaintiff and landowner DeGraauw.
TRIAL COURT
After a brief trial, the court ruled in favor of the bank:
Concerning the third party beneficiary claim of plaintiff, according to the case of Blair vs. Haydel, 504 So.2nd 1044 held that, “If a bank fully performed, there is no third party beneficiary claim,” which is the same as this case. The bank fully performed, the bank paid Mr. DeGraauw.
I .APPEAL
Arguments
Plaintiff claims recourse as a “third party beneficiary” to the contract between the bank and landowner or, alternatively, maintains that it was justified in relying on the bank’s representations that it could expect payment upon presentation of the architect’s certification and no more. In support of its position, it notes that it was compensated for the first three requests so certified. In light of the commitment letter and the history of the first three payments, it argues that it is entitled to payment for the fourth and fifth requests for payment similarly certified by the architect March 9 and 25, 1992, respectively.
The bank, on the other hand, believes that its payment in full of the loan to the landowner absolves it of any responsibility to anyone, notwithstanding the statement contained in its commitment letter that it would pay the contractor directly. As to the question of detrimental reliance for which the trial court also ruled in its favor, it maintains that because the contractor signed a construction contract prior to the bank’s issuance of the commitment letter, it cannot now say it relied on the bank’s commitment letter to its detriment.

ASSUMPTION OF OBLIGATION vs. STIPULATION POUR AUTRUI

The question is whether the bank obligated itself to the contractor, and if so, whether its having disbursed the full amount of the loan relieved it of any continuing obligations. Apparently, the answer turns on whether the commitment letter gave rise to an entirely separate obligation for which the contractor is entitled to compensation, or whether the contractor is entitled to payment as a consequence of its detrimental |6reliance on the letter and subsequent actions of the bank. However, for reasons to be set forth in detail, insofar as we find that the contractor’s agreed to release the landowner DeGraauw would operate to prejudice the bank, we affirm.
DISCUSSION
The language contained in the commitment letter in the ease sub judiee is strikingly similar to those binding creditors in similar circumstances in A.F. Blair Co., Inc. v. Haydel, 504 So.2d 1044 (La.App. 1st Cir.1987),[1] and Jim Walter Corporation v. Laperouse, 196 So.2d 539, 545 (La.App. 3d Cir.1967).[2] *850 Indeed, if anything, defendant’s commitment letter here is stronger than those of the cited cases, Ras the bank not only indicated sufficient funds were available, but specifically agreed to pay the contractors.
The trial court erroneously concluded that the bank’s disbursal of its loan to the landowner relieved it of any obligation it might have incurred by virtue of its commitment letter to the contractor. In doing so, the trial court in large measure adopted the bank’s interpretation of our state’s law of obligations. To support its position that its full funding of the loan relieved it of any responsibility to the contractor, the bank relies upon LSA-CC art. 1982, which provides as follows:
Art. 1982. Defenses of the promisor
The promisor may raise against the beneficiary such defenses based on the contract as he may have raised against the stipulator. Acts 1984, No. 331, § 1.
However, the authority cited by defendant is inapplicable and should not have been relied upon by the trial court, as it governs the effects of agreements between obligors intended for the benefit of third parties. Here, we are concerned with an agreement between an obligee (Rudick, the contractor) and a third party (the bank) who agrees to assume the obligation of another.
In truth, the bank assumed the obligations of DeGraauw, subject to the suspensive condition that the architect certify that certain sums were owing. By virtue of the bank’s commitment letter, the contractor acquired the right to proceed directly against it as to the fourth and fifth payment requests upon certification of completion by the architect.
IgArt. 1823. Assumption by agreement between obligee and third person
An obligee and a third person may agree on an assumption by the latter of an obligation owed by another to the former. That agreement must be made in writing.
That agreement does not effect a release of the original obligor.
Art. 1824. Defenses
A person who, by agreement with the obligee, has assumed another’s obligation may not raise against the obligee any defense based on the relationship between the assuming obligor and the original obli-gor.
The assuming obligor may raise any defense based on the relationship between the original obligor and obligee. He may not invoke compensation based on an obligation owed by the obligee to the original obligor.
The erroneous conclusion reached by the trial court additionally was induced in part by plaintiff’s mistaken use of the term “third party beneficiary” to describe its position. Properly speaking, the landowner, De-Graauw, was the third party beneficiary of the commitment letter addressed by the bank. “When the assumption is by agreement between the obligee and the assuming obligor, it is the original debtor who is made a third party beneficiary of that agreement, since it gives him the benefit of having his obligation performed by another.” Litvinoff, Obligations, 5 Louisiana Civil Law Treatise Section 10.33 at 263-264 (West 1992).
The facts as set forth by the pleadings and the evidence clearly set forth a claim for which the laws of our state provide plaintiff relief. See generally, Cox v. W.M. Heroman & Co., Inc., 298 So.2d 848, 855 (La.1974). Pursuant to LSA-CC articles 1823 and 1824, supra, and the facts of this case, we hold that liability attaches to the bank by virtue of the commitment letter it issued. The testimony of the bank’s witnesses leave little doubt as to what was intended. The bank officer stated that the commitment letter was the only agreement stating how the loan would be funded, and |9that the purpose of the letter was to accommodate the bank’s loan customers “by verifying financing terms for their contractor and contractors.” Additionally, *851 both bank employees corroborated that the commitment letter was addressed to the contractor, that it indicated that the loan proceeds were to be distributed to the contractors upon certification by the architect, and that the bank did not inspect the construction site to confirm work progress but relied exclusively on the architect’s opinion in this regard. Although it was the bank’s customer who requested the commitment letter from the bank, he did so after the contractor informed him that such a financial commitment would be necessary for him to proceed.
Nonetheless, our review of a consent judgment in the record leads to the conclusion reached by the trial court. Legal subrogation takes place when an obligor pays a debt he owes with others and who has recourse against those others as a result of the payment. LSA-CC art. 1829(3); Hull v. Louisiana Indent., 606 So.2d 923 (La.App. 3d Cir. 1992). Were we to require the bank to pay plaintiff, it could not then proceed against the landowner for the items so paid owing to plaintiff’s prior release of the landowner De-Graauw, see Bosch v. Cummings, 520 So.2d 721 (La.1988), who then would recover twice for the same injury.
Plaintiff dismissed its claims against landowner DeGraauw, who is no longer an obli-gor to plaintiff. Therefore, the Bank cannot stand in plaintiffs shoes through subrogation. See generally, Perkins v. Scaffolding Rental & Erection, 568 So.2d 549 (La.1990).

Conclusion

The bank assumed its customer’s obligations when it informed the contractor that it would pay the contractor directly upon certification by the architect. These obligations of the bank became due upon the architect’s signatures to the contractor’s | ^obligations of the bank became due upon the architect’s signatures to the contractor’s fourth and fifth requests for payments, that is, by fulfillment of the suspensive condition called for in the commitment letter. Nonetheless, because the contractor apparently has settled in full the principal obligation of the landowner for the work in question, the bank owes Rudick Company nothing. The bank is to bear its own costs, and defendant Rudick Company to bear its and the landowner’s costs by virtue of its agreement with that party.
AFFIRMED AS AMENDED.
WOODARD, J., concurs in result without written reasons.
*852 luEXHIBIT
[[Image here]]
*853 [[Image here]]

. “Please be advised that American Bank has approved a loan to K. Gerald Haydel, M.D. for whom you will perform services. The loan is sufficient in amount to satisfy the contract between the parties....”

. "Jim Walter Corporation
P.O. Box 9128
Tampa, Florida “Gentlemen:
"Referring to contract entered into by and between you and James J. Laperouse for construction of five homes in Fontelieu Addition to be constructed upon the lots described as follows:
"Lot No. 5, Block 2 Fontelieu Addition
Lot No. 6, Block 2 Fontelieu Addition
Lot No. 7, Block 2 Fontelieu Addition
Lot No. 8, Block 2 Fontelieu Addition
Lot No. 9, Block 2 Fontelieu Addition
*850 "We have made a commitment to Mr. Laper-ouse to finance the houses to be constructed upon these lots to the extent of $5,000.00 per unit. We have in our possession mortgage notes which have been recorded prior to any construction on said lots, and proceeds of these loans are to be used for payment of materials and buildings furnished on each respective lot.
Very truly yours, /s/ Jack O. Broussard Assistant Cashier.”